UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PEDRO ANDRES BRAVO,

    Petitioner,

v.                                                Case No. 1:22-cv-69-AW-MJF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Pedro Andres Bravo, proceeding with counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") moves to dismiss the petition as untimely. Doc. 7. Bravo opposes the motion. Doc. 14. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Bravo's petition should be dismissed as time-barred.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. Background Facts and Undisputed Procedural History[2]

Ten years ago, Bravo murdered Christian Aguilar because Bravo was jealous of Aguilar's relationship with Bravo's ex-girlfriend. The three were in the same circle of friends. At the time, Aguilar had just started his freshman year at the University of Florida which, according to Aguilar's father, was his dream.

On September 20, 2012, Bravo asked to meet with Aguilar so they could talk. Aguilar obliged. The two shopped for music together and drove around in Bravo's car. As their visit came to a close, Bravo drove to a parking lot where he poisoned and strangled Aguilar. Bravo then moved the unresponsive Aguilar to the back seat and drove around until he was certain Aguilar had expired. Bravo disposed of Aguilar's body in the woods of a private hunting club. Law enforcement agents—and Aguilar's parents—spent weeks searching for Aguilar, until his body was discovered by two men harvesting vines.

In Alachua County Circuit Court Case No. 2012-CF-3821, Bravo was convicted of seven crimes: (1) First-Degree Murder; (2) False Imprisonment; (3) Poisoning; (4) Tampering with Physical Evidence; (5) Providing False Information

---

[2] The background facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See* Doc. 7, Ex. B (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

to Law Enforcement Authorities Concerning the Commission of a Capital Felony; (6) Providing False Information to Law Enforcement Authorities Concerning a Missing Person Investigation; and (7) Unlawful Transportation of Human Remains. Doc. 7, Ex. A at 265-66 (Verdict), 247-57 (J. & Sentence).[3] The trial court sentenced Bravo to imprisonment for life. Ex. A at 247-57.

On October 7, 2016, the Florida First District Court of Appeal ("First DCA") affirmed the judgment in a written opinion:

> Following a ten-day jury trial, Appellant was convicted of first degree murder, false imprisonment, poisoning, tampering with physical evidence, giving false information to law enforcement concerning the commission of a capital felony, giving false information to law enforcement concerning a missing person investigation, and unlawful transportation of human remains, related to the death of his friend. Appellant raises three issues on appeal which we reject.
>
> We reject the Appellant's first claim that the trial court erred in denying a motion for new trial based on newly discovered evidence. At the evidentiary hearing on the motion for new trial, Appellant did not meet his burden to show that the purported newly discovered evidence was "of such nature that it would probably produce an acquittal on retrial." *Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991); *see also Johnston v. State*, 27 So. 3d 11 (Fla. 2010). Furthermore, to the extent that Appellant's claim of a *Brady*[FN1] violation was preserved, we do not find that any violation occurred.

---

[3] Hereafter, all citations to the state-court record are to the electronically-filed exhibits attached to the State's motion to dismiss, Doc. 7. When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center of the page.

> FN1 *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).
>
> We reject Appellant's second claim that the trial court erred in denying his motion to suppress his inculpatory statements made to law enforcement. The question of whether a suspect is in custody during interrogation is a mixed question of law and fact. *Ramirez v. State*, 739 So.2d 568 (Fla. 1999). "A trial court's ruling on a motion to suppress is presumed correct." *Bonifay v. State*, 626 So. 2d 1310, 1312 (Fla. 1993). The trial court made extensive factual findings on the suppression issue and these findings were supported by competent, substantial evidence. *See Parker v. State*, 873 So. 2d 270 (Fla. 2004). The trial court applied the correct law in determining whether Appellant was subject to custodial interrogation. Therefore, we find no error in the trial court's finding that when Appellant voluntarily spoke with law enforcement as part of his scheme to mislead authorities as to the reason for Mr. Aguilar's disappearance, Appellant was not being subjected to custodial interrogation.
>
> Finally, we reject Appellant's claim of a Confrontation Clause violation regarding testimony as to Appellant's cell phone location. As we have previously stated, "business records 'by their nature' are not testimonial." *Martin v. State*, 936 So. 2d 1190 (Fla. 1st DCA 2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 56, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)).
>
> AFFIRMED.

*Bravo v. State*, 200 So. 3d 797, 798-99 (Fla. 1st DCA 2016) (per curiam). Bravo did not move for rehearing and did not seek further direct review.

On December 27, 2017, Bravo filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3800(a). Ex. H at 38-45. The state circuit court denied the motion. Ex. H at 46-63. The First DCA affirmed without written

opinion. *Bravo v. State*, 255 So. 3d 264 (Fla. 1st DCA 2018) (Table) (per curiam) (copy at Ex. J). The mandate issued November 13, 2018. Ex. J.

On October 23, 2018, Bravo filed a *pro se* petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel. Ex. K. The First DCA denied the petition on the merits, and denied rehearing on April 5, 2019. *Bravo v. State*, 266 So. 3d 1248 (Fla. 1st DCA 2019) (Mem.) (per curiam) (copy at Ex. L). On April 18, 2019, Bravo filed a motion for rehearing, rehearing en banc, and written opinion, which was denied on May 15, 2019. Ex. M.

On December 28, 2018, Bravo filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Ex. N at 40-68. The state circuit court denied the motion. Ex. N at 69-831. The First DCA affirmed without written opinion. *Bravo v. State*, 334 So. 3d 606 (Fla. 1st DCA 2021) (Table) (per curiam) (copy at Ex. Q). The mandate issued March 14, 2022. Ex. Q.

Bravo filed his counseled federal habeas petition on March 21, 2022. Doc. 1. The petition raises fifteen claims. *Id*. at 5-82.

The State moves to dismiss Bravo's petition as time-barred under 28 U.S.C. § 2244(d)(1). Doc. 7. Bravo opposes the motion. Doc. 14.

## II.  Discussion

A.  **The Federal Habeas Limitations Period**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Bravo's § 2254 petition, because the petition was filed after the AEDPA's effective date—April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

B.  **Bravo's Habeas Petition Is Untimely**

Bravo does not assert that an unconstitutional State-created impediment to filing his federal habeas petition existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his judgment became final. Accordingly, the statute of limitations is measured from the remaining trigger, which is the date Bravo's judgment became final. *See* 28 U.S.C. § 2244(d)(1).

It is undisputed that Bravo did not seek further direct review in the Florida Supreme Court or in the United States Supreme Court. In *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012), the United States Supreme Court held that for habeas petitioners who do not pursue direct review all the way to the United States Supreme Court, their judgments become "final" for purposes of § 2244(d)(1)(A), "when the time for pursuing direct review in this Court, or in state court, expires." *Gonzalez*, 565 U.S. at 150. The timeliness of Bravo's habeas petition turns on whether his conviction became final thirty days after issuance of the First DCA's opinion (as the State maintains), or ninety days after issuance of that opinion (as Bravo maintains). *See* Doc. 1 at 81-82; Doc. 7, Doc. 14.

The State asserts that Bravo could have sought discretionary review in the Florida Supreme Court, because the First DCA's written opinion expressly addressed questions of law and contained detailed factual and legal bases for its rulings. Doc. 7 at 5-11. Bravo asserts that the Florida Supreme Court did not have jurisdiction to review his case, and that the First DCA's opinion was the final decision of the highest state court empowered to hear his case. Doc. 14.

The Florida Constitution provides that the Florida Supreme Court "[m]ay review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Fla. Const. art. V, § 3. The Florida Supreme Court explained the scope of its jurisdiction in *The Fla. Star v. B.J.F.*, 530 So. 2d 286 (Fla. 1988):

> This Court in the broadest sense has subject-matter jurisdiction under article V, section 3(b)(3) of the Florida Constitution, over any decision of a district court that expressly addresses a question of law within the four corners of the opinion itself. That is, the opinion must contain a statement or citation effectively establishing a point of law upon which the decision rests.

*The Fla. Star*, 530 So. 2d at 288 (footnote omitted)

The First DCA's written opinion in Bravo's direct appeal meets the above requirement. Discretionary review in the Florida Supreme Court was available to Bravo. This conclusion is consistent with that of numerous federal district courts in Florida that have addressed the same legal issue in the same habeas context on analogous facts. *See Hall v. Sec'y, Fla. Dep't of Corr.*, No. 4:20-cv-444-MW/MAF, 2022 WL 2654988, at *4 (N.D. Fla. June 6, 2022), *report and recommendation adopted*, 2022 WL 2649086 (N.D. Fla. July 8, 2022); *Palmer v. Inch*, No. 5:19-cv-02-MCR/HTC, 2021 WL 4526709, at *3 (N.D. Fla. July 1, 2021) *report and recommendation adopted*, 2021 WL 4523079 (N.D. Fla. Oct. 4, 2021), *appeal dismissed*, No. 21-13884-F (11th Cir. Feb. 15, 2022); *Vaughn v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-1005-TJC-PDB, 2021 WL 2941783, at *2 (M.D. Fla. July 13, 2021); *Spivey v. Sec'y, Fla. Dep't of Corr.*, No. 3:15-cv-23-J-34JRK, 2019 WL 10749420, at *1 (M.D. Fla. Jan. 29, 2019); *Dailey v. Crews*, No. 3:13-cv-148-WS/EMT, 2014 WL 2158428, at *3-5 (N.D. Fla. May 23, 2014); *Coulliette v. Sec'y, Dep't of Corr.*, No. 5:12cv355-MW/GRJ, 2014 WL 518936, at *2 (N.D. Fla. Feb. 10, 2014); *Ho v. Sec'y of Dep't of Corr.*, No. 20-cv-80010-Smith/Matthewman, 2020 WL 7890670, at *3-5 (S.D. Fla. Nov. 5, 2020), *report and recommendation adopted*, 2021 WL 38268 (S.D. Fla. Jan. 5, 2021), *certificate of appealability denied*, No. 21-10334-C, 2021 WL 6803349 (11th Cir. Aug. 26, 2021); *Edwards v. Sec'y of the Fla.*

*Dep't of Corr.*, No. 3:17-cv-1205-J-25PDB, 2018 WL 11025817, at *2 (M.D. Fla. Oct. 4, 2018); *Lingebach v. Jones*, No. 3:15-cv-1381-J-39PDB, 2017 WL 6406807, at *7 & n.6 (M.D. Fla. Dec. 15, 2017), *certificate of appealability denied*, No. 18-10236-B, 2018 WL 3548701 (11th Cir. May 15, 2018); *Moore v. Crews*, No. 13-14482-CIV-MARTINEZ, 2014 WL 12651190, at *1 (S.D. Fla. Apr. 3, 2014), *report and recommendation adopted*, 2014 WL 12652325 (S.D. Fla. May 7, 2014).[4]

The time for Bravo to seek discretionary review in the Florida Supreme Court expired on November 7, 2016, which is thirty days after rendition of the First DCA's order affirming the judgment. *See* Fla. R. App. P. 9.120(b).[5] Thus, Bravo's conviction became "final" for purposes of § 2244(d)(1)(A), on November 7, 2016. *See* 28 U.S.C. § 2244(d)(1); *Gonzalez*, 565 U.S. at 150.

---

[4] Bravo cites a single federal district court case that, he says, reached the opposite conclusion. Doc. 14 at 13 (citing *Wiggins v. Sec'y, Dep't of Corr.*, No. 6:13-cv-905-Orl-18DAB (M.D. Fla. May 12, 2015)). In *Wiggins*, the district court stated in a footnote: "Respondents argue that the petition was untimely filed. However, Petitioner filed the petition on the last day of the one-year limitations period." *Wiggins*, No. 6:13-cv-905, Doc. 12 at 5 n.2. The footnote in *Wiggins* is not persuasive, because there is no indication of the court's reasoning and, even assuming it followed the same logic Bravo offers here, the case is at most an outlier given the numerous cases just cited.

[5] Because November 6, 2016, was a Sunday, Bravo had until the next day, Monday, November 7, 2016, to file a petition in the Florida Supreme Court. *See* Fla. R. App. P. 9.420(e); Fla. R. Gen. Prac. & Jud. Admin. 2.514.

The federal habeas limitations period began to run one day later, on November 8, 2016, and expired one year later, on November 8, 2017, absent tolling. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to calculation of the AEDPA's one-year limitations period; thus, the limitations period begins to run from the day after the day of the event that triggers the period); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period should be calculated according to the "anniversary method," whereby the limitations period expires on the one-year anniversary of the date it began to run).

Bravo did not file any application that qualified for statutory tolling under § 2244(d)(2) during that critical one-year period. None of Bravo's later state postconviction filings triggered the tolling benefit of § 2244(d)(2), because the limitations period already had expired. *See Alexander v. Sec'y, Dep't of Corr.*, 523 F.3d 1291, 1294 (11th Cir. 2008) (holding that a state-court motion for postconviction relief cannot toll the limitations period if that period has already expired); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Nor did the later

filings reinitiate the federal limitations period. *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).

Bravo's federal habeas petition, filed on March 21, 2022, is untimely by *more than four years*.

### C. Bravo's Untimely Petition Should Be Dismissed

Bravo does not allege that he is entitled to equitable tolling or any other exception to the limitations bar. The District Court, therefore, should dismiss Bravo's untimely petition.

### III. A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA

stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Respondent's motion to dismiss, Doc. 7, be **GRANTED**.

2. The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Pedro Andres Bravo*, Alachua County Circuit Court Case No. 2012-CF-3821, be **DISMISSED WITH PREJUDICE** as time-barred.

3. The District Court **DENY** a certificate of appealability.

4. The clerk of court close this case file.

At Panama City, Florida, this 28th day of September, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**